IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CONSTANTINE PETROVIC and CYNTHIA PETROVIC,<br><br>Plaintiffs,<br><br>v.<br><br>TRAVELERS PROPERTY CASUALTY INSURANCE COMPANY, a corporation, THE STANDARD FIRE INSURANCE COMPANY, a corporation,<br><br>Defendants. | No. C 15-01713 WHA<br><br>**ORDER DENYING MOTION TO TRANSFER VENUE WITHOUT PREJUDICE TO RENEWAL** |

**INTRODUCTION**

In this insurance dispute, two insurance companies move to dismiss this action for improper venue or, in the alternative, transfer this action to the Central District of California pursuant to 28 U.S.C. 1404(a). For the reasons that follow, defendants' motions to dismiss or to transfer venue are **DENIED**.

One of the insurers also moves to dismiss pursuant to Rule 12(b)(6). For the reasons stated below, that motion is **DENIED AS MOOT**.

**STATEMENT**

Defendants, Travelers Property Casualty Insurance Company and Standard Fire Insurance Company, are both insurance companies domiciled in Connecticut and licensed to do business in California. Plaintiffs allege that the two entities are alter egos. As stated at oral arguments, Standard Fire and Travelers are sister companies. Plaintiffs, Constantine ("Dino")

1   and Cynthia Petrovic are husband and wife. Mr. Petrovic suffers from dementia and Mrs.
2   Petrovic has lupus. The Petrovics own a home in Corona, California, where they resided until
3   August 2012 (Compl. ¶¶ 3–4, 12).

4   From December 2011–December 2012, the Petrovics insured their home through
5   Travelers. The policy provided both property and liability coverage. Specifically, it covered
6   $850,926 in personal property damage (Pls.' Opp., Exh. 2).

7   In December 2012, when their policy lapsed, the Petrovics purchased another
8   homeowner's insurance policy from Standard Fire for the same property. The policy, again,
9   covered a one-year period and provided both property and liability coverage. The amounts of
10  the policy limits were identical to those in the 2011 policy (Compl., Exh. 1).

       **1.     AUGUST 2012 FIRE AND THEFT CLAIMS.**

12  In August 2012, a fire caused substantial damage to the Petrovics' home. Subsequently,
13  the Petrovics moved into a hotel room and filed a fire loss claim with Travelers, their insurer at
14  the time. The Petrovics do not seek damages in this suit based on the fire claim. Upon
15  agreement with defendants, the Petrovics hired a company, Paul Davis Restoration of San Diego,
16  Inc., to catalog the damaged items and transport their goods to a storage facility (*id.* ¶¶ 14,
17  18–20).

18  Approximately one week after the fire, Mr. Petrovic noticed that the house had been
19  burglarized. A Corona police officer arrived at the scene, but plaintiff could not identify which
20  items had been stolen versus destroyed by the fire. When Paul Davis Restoration completed its
21  inventory in September 2012, Mr. Petrovic realized that many items were excluded from the list
22  and most likely stolen the previous month. He informed claims adjuster Patrick Hall of the
23  missing items (*id.* ¶¶ 21–22).

24  Defendants allocated the theft related loss to the Petrovics' fire claim (rather than
25  creating a separate claim), thus limiting the coverage to $850,926 (rather than two separate limits
26  of $850,926 respectively). The loss exceeded the limits of a single policy. The Petrovics,
27  pursuant to defendants' instructions, submitted a contents list of the theft-related loss. Although

defendants agreed to cover some of the items, they did not cover approximately $87,000 worth of designer clothing because the Petrovics had reached their policy limit (*id.* ¶ 23).

In November 2012, the Petrovics moved to San Francisco while their house underwent repair. Many of their belongings remained in the garage or guest home of their Corona property (*id.* ¶ 25). As stated, the Petrovics obtained a new insurance policy with Standard Fire in December 2012. The Petrovics characterize this agreement as a renewal policy, whereas Travelers characterizes it as new policy (*id.*, Exh. 1; Pls.' Opp. at 7).

### 2. JANUARY 2013 THEFT CLAIM.

In January 2013, Mr. Petrovic's neighbor in Corona noticed evidence of a second break-in (a smashed window and pried lock on the garage door); structural damage to the guesthouse also ensued. The neighbor, Darnell Lewis, contacted Mr. Petrovic and the police. Mr. Petrovic subsequently notified defendants, who assigned a separate claim to the January 2013 theft and sent representatives to the property multiple times. The Petrovics hired CrossCheck Public Adjusters, Inc., to assist with the inventory list and proof of loss (Compl. ¶¶ 26–27).

Following the January 2013 theft, defendants required the Petrovics to submit to three examinations under oath (EUO). During the first EUO in February 2013, Mr. Petrovic admitted that he was unsure which items were damaged by the fire, stolen from either the August 2012 or January 2013 burglaries, or stored in inventory (*id.* ¶¶ 28–29, 34, 37).

In a letter dated April 2013, defendants denied the Petrovics' January 2013 theft claim for lack of proof of ownership or proof of loss. CrossCheck subsequently submitted a sworn proof of loss form to defendants claiming over $441,000 in loss. The Petrovics later presented an amended figure, a reduced amount of approximately $281,000 to defendants (*id.* ¶ 30, Exh. 3).

In August 2013, defendants again refused to accept the proof of loss for lack of an itemized receipt and ongoing investigation of the claims. In his February 2014 EUO, Mr. Petrovic informed defendants of his dementia. He further explained that he neglected to include all items on the contents list submitted in January 2013 because he had not checked all areas of

the property for damage. The Petrovics then submitted another sworn proof of loss for approximately $342,800 (*id.* ¶¶ 32, 35–36, Exh. 4–5).

During his third EUO in September 2014, Mr. Petrovic conceded that not all of the items claimed as part of the January 2013 theft went missing at that time. Mr. Petrovic, however, listed all items as part of the January 2013 theft because defendants "let [his] property rot for months." He further explained, "they are my insurance company, and it appears that whoever got Part A of the warming tray and Part A of the barbecue came back to get the rest of it" (*id.* ¶ 37, Exh. 6).

Three months later, in December 2014, defendants again denied the Petrovics' January 2013 theft claim because "Mr. Petrovic . . . misrepresented the amount of personal property stolen or damaged as a result of Theft and the total value of the personal property claim" (*id.* ¶¶ 38–39, Exh. 7). Defendants explained the denial of coverage, alleging Mr. Petrovic violated the concealment and fraud provision of the policy by making a false statement (*ibid.*). Put simply, Mr. Petrovic allegedly included items that were not damaged or missing as a result of the January 2013 theft.

### 3. CURRENT STATE OF THE CORONA PROPERTY.

The Court requested a detailed description of the Petrovics' plans and efforts to reconstruct the Corona property and the estimated timeline for their return (Dkt. No. 38). To date, demolition and clean-up work has been completed, but the rebuilding process has not yet begun, as the plans for such reconstruction are pending approval from the City of Corona Building Department (Petrovic Decl. ¶ 22). The Petrovics anticipate beginning reconstruction as soon as the plans are approved, however they have not yet determined whether they will permanently return to the Central District of California, and are considering selling their property in Corona in order to downsize (*id.* ¶¶ 26–27).

The Petrovics commenced this action in April 2015, claiming breach of contract and breach of the duty of good faith and fair dealing. They seek economic and consequential as well as punitive and exemplary damages and attorney's fees and costs incurred (Compl. ¶ 52). Defendants now move to dismiss the action for improper venue pursuant to Rule 12(b)(3) or

4

1  alternatively to transfer venue to the Central District of California. Travelers also filed a motion
2  to dismiss for failure to state a claim under Rule 12(b)(6).
3  This order follows full briefing, oral argument, and supplemental briefing.

**ANALYSIS**

Defendants move to dismiss this lawsuit for improper venue. Where venue is *improper*, a district court must either dismiss the case or transfer it "in the interests of justice" to an appropriate jurisdiction. Rule 12(b)(3). Where venue is *proper*, a court may transfer any civil action to another jurisdiction where it may have been brought "for the convenience of parties and witnesses, in the interests of justice." 28 U.S.C. 1404(a); *see also Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

**1.   VENUE IS PROPER IN THE NORTHERN DISTRICT OF CALIFORNIA.**

Pursuant to 28 U.S.C. 1391(b), venue is proper in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

For purposes of venue, corporate defendants reside in any district where they would be subject to personal jurisdiction if that district were a separate state. 28 U.S.C. 1391(d). Plaintiffs have the burden of proving that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When evaluating a Rule 12(b)(3) motion, a court can examine facts beyond the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

Defendants contend that venue in the Northern District is improper because the property at issue is located in the Central District, where the majority of third-party witnesses reside. In contrast, the Petrovics argue that venue is proper because defendants are now residents of the Northern District and they resided in San Francisco when they purchased the renewal policy (Pls.' Opp. at 10).

5

Defendants, however, admit that personal jurisdiction in this district remains undisputed and "do not assert that this Court lacks personal jurisdiction" (Defs.' Reply at 3). Defendants are licensed to do business throughout the state and maintain minimum contacts throughout the state, and thus are subject to personal jurisdiction in this district (Pls.' Opp. at 8). Accordingly, this order finds that venue is proper in the Northern District.

### 2. TRANSFER PURSUANT TO 28 U.S.C. 1404(a).

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. 1404(a). "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843 (citations omitted).

#### A. Jurisdiction in the Central District of California.

The party moving for a transfer must show that the action could have been brought in the court designated for transfer. 28 U.S.C. 1404(a). The transferee district must have proper subject-matter jurisdiction, personal jurisdiction, and venue. Here, the Central District of California would have subject-matter jurisdiction based on diversity (Compl. ¶ 8). Moreover, the Central District would have personal jurisdiction over defendants. The Petrovics do not contest that this case could have been brought in the Central District. Defendants conduct business throughout California, for example, insuring the Petrovics' home (the property in question) in the Central District of California (as evidenced by the policy itself) (Defs.' Mot. at 7; Compl., ¶ 3, Exh. 1).

#### B. Convenience and Fairness.

In deciding whether to grant a motion to transfer pursuant to Section 1404(a), the district court must consider both public factors, which go to the interest of justice, and private factors, which go to the convenience of the parties and witnesses. *Decker Coal Co.*, 805 F.2d at 843. Courts may take into account:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's claim in the chosen forum, (6) the difference in the costs of litigation between the two forums, (7) the availability of

6

compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof.

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).

"The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal*, 805 F.2d at 843. However, "[i]f the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration." *Pacific Car & Foundry Co. v. Pence*, 403 F.2d 949, 954 (9th Cir. 1968). A district court has discretion "to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." *Jones*, 211 F.3d at 495 (internal quotation marks and citation omitted).

Even though the claims are inextricably linked to the thefts at the Corona property, located in the Central District, the Petrovics have a genuine connection to the Northern District. The Petrovics reside in this forum and Mr. Petrovic remains under the care of a doctor in San Francisco. Mr. Petrovic faces potential harms associated with travel due to his medical condition. Further, it appears unlikely that the Petrovics' will resume their residency in Corona while this case is pending, if at all. The Petrovics' medical conditions (Mr. Petrovic's dementia and Mrs. Petrovic's lupus) and the financial burden associated with traveling to the Central District weigh against transfer. Defendants, on the other hand, will not be severely inconvenienced by a trial in the Northern District.

Defendants rely on *Tankel v. Seiberling Rubber Co.*, 95 F. Supp. 987 (N.D. Cal. 1951) (Judge George Harris), which involved a negligence claim, to support their assertion that "transfer [is] appropriate to [the] locus of [the] underlying accident where the majority of defendant's non-party, non-friendly witnesses [are] located there" (Defs.' Reply at 5). In *Tankel*, 95 F. Supp. at 988, however, the court found that "[a]n analysis of defendant's affidavit indicate[d] that a majority of the individuals assertedly needed as witnesses [were] indeed important to defendant's case." There, the court noted that a possibility of viewing the premise also weighed in favor of transfer. The circumstances in *Tankel* are distinguishable from those at hand, as discussed herein.

7

The Central District and the Northern District are likely to have similar familiarity with the claims herein, which are all California state-law claims; thus, this order finds that factor neutral (Compl. ¶¶ 43, 46).

The Petrovics contend that the majority of pertinent documents remain in this district or nearest to this district — either in the Petrovics' possession or at defendants' Sacramento office. Defendants explain that the evidence is actually located with the claims adjuster who lives in Texas and reports to the Connecticut branch, and thus outside both the Northern and Central Districts (Defs.' Reply at 4 n.2). They also aver that critical information remains in the Corona Fire and Police Departments' possession in the Central District. Neither party, however, contends that transporting documents or converting them into electronic format would cause a significant hardship. Nor do they allege that this case involves voluminous documents. Thus, this factor remains neutral.

Third-party witnesses are an important factor. Defendants list six pertinent witnesses — The Corona Fire and Police Departments (witness to the fire and thefts respectively), Paul Davis Restoration, CrossCheck, Elliot Luchs (the Petrovics' attorney for the EUOs), and Darnell Lewis (the Petrovics' neighbor in Corona) — all of whom, save one, reside in the Central District (Defs.' Mot. at 4–5). Lewis and Luchas submitted sworn declarations that they would travel to and testify in the Northern District (Pls. Opp., Lewis Decl., Luchas Decl.). While claims adjuster Lisa Arnott works in Sacramento (which is within 100 miles of San Francisco), the primary person handling the theft claim lives in Texas and reports to the Connecticut office; neither the Northern nor the Central District could compel his testimony (Defs.' Reply at 4). The Petrovics name Dr. Howard Rosen (Mr. Petrovic's treating physician for his dementia) as a third-party witness. Dr. Rosen resides in the Northern District and will provide testimony regarding Mr. Petrovic's mental state in relation to his misrepresentation of the theft claim.

Neither side, however, would be able to guarantee the appearance of the third-party witnesses from the police and fire departments at trial in the Northern District. Rule 45(c)(1) specifies that a subpoena may require a person to testify at trial *only if* the court is within 100

miles of where the person resides or works, or if the court is within the state where the individual resides or works *and* attending trial would not result in substantial expense. Although the police and fire departments are located in Corona, which is over 400 miles from San Francisco, and thus not within the Court's subpoena power, defendants have failed to show that their testimony is crucial.

In their reply, defendants explain that the departments will authenticate investigative reports, provide "evidence either supporting or refuting Standard Fire's claim denial," and testify as to what was stolen (Defs.' Reply at 6). Documents, however, can be authenticated for trial purposes through deposition. Moreover, defendants have not shown that it is necessary for a jury to see and hear from these witnesses live (*e.g.*, there is no indication that these witnesses' credibility or substantive testimony will be in question). Defendants can still depose these third-party witnesses, even though they reside outside this district, and can present such testimony or video recording at trial.

During oral argument, the undersigned asked parties whether it would be beneficial for the jury to view the Corona property. Plaintiffs answered in the negative, although defendants did not respond. Plaintiffs' description of the current state of the property, particularly noting that demolition and clean-up work has been completed, suggests such a viewing would offer limited, if any, probative value.

The undersigned subsequently requested additional information concerning third-party witnesses employed by the police and fire departments (Dkt. No. 32). In response, defendants submitted a sworn declaration by Attorney Wynn Kaneshiro, explaining that they had failed to provide specific names of representatives from the police and fire departments in their moving papers because counsel lacked access to all of their clients' documents relating to the insurance claims (Defs.' Supp. Brief at ¶¶ 3–4). Notably, defendants only identified the alleged key witnesses by name *after* the Court requested that information (Dkt. No. 32). While defendants have now identified witnesses by name, they have provided only descriptions of their relevance and have offered no compelling reasons as to the materiality or necessity of *live* testimony at

trial (rather than deposition). If those witnesses were so important surely their names would have been known.

In their briefs, defendants cite to *Commercial Solvents Corp. v. Liberty Mutual Insurance Co.*, 371 F. Supp. 247 (S.D.N.Y. 1974), to support transfer to a forum where crucial witnesses reside. There, the court found that neither the plaintiffs nor the defendant offered compelling arguments as to which forum would be more convenient. Moreover, the court stated that some of the issues required oral testimony of third-party witness. *Id.* at 250. Such is not the case here.

Thus, defendants have not met their burden of showing that this action should proceed in the Central District of California. It is all too easy to assert that a list of key witnesses live in a transferee forum but when it is really essential for the jury to see them live, the moving party will readily have their names and addresses. Defendants have made too bare a showing of inconvenience to justify disrupting plaintiffs' choice of forum. As stated, defendants can take the depositions of third-party witnesses; if defendants can make a showing that these witnesses are critical and that it is necessary for the jury to see and hear from them in person, then defendants can renew their motion to transfer venue at that time.

### C.     Public Interest.

A district court hearing a motion to transfer must also consider public-interest factors such as relative degrees of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. *Decker Coal*, 805 F.2d at 843. Although defendants are licensed in the entire state of California, and thus not without any connection to the Northern District, the property insured by the policy in question remains in the Central District. This slightly favors transfer to the Central District. With regard to the familiarity of the forum and relative congestion, these factors are neutral.

In sum, plaintiffs selected this forum and would face great inconvenience if this case were tried in the Central District. Defendants have not shown that third-party witnesses are critical and that it is necessary for them to appear at trial in the flesh rather than by deposition. Accordingly, defendants' motion to transfer this action is **DENIED**.

10

### 3. **TRAVELERS' MOTION TO DISMISS.**

Travelers also filed a Rule 12(b)(6) motion to dismiss, arguing that the Petrovics failed to state any claims concerning the first policy (December 2011–December 2012); Travelers and Standard Fire were not alter egos; and Travelers was not party to the second policy (December 2012–December 2013). At oral argument, plaintiffs' counsel offered to amend the complaint to address these alleged deficiencies. Defendants' counsel was amenable, and while this motion was pending an amended complaint was filed (Dkt. No. 39). Accordingly, this motion is **DENIED AS MOOT**.

### **CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for improper venue is **DENIED**. Defendants motion to transfer is also **DENIED**, however, the Court will entertain a renewed motion to transfer venue if discovery later reveals the Petrovics intend to return to the Central District of California. Travelers' motion to dismiss pursuant to Rule 12(b)(6) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

Dated: August 4, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

11